UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALLSTATE NORTHBROOK INDEMNITY COMPANY,

Plaintiff,

v.

TRUNG VAN DO,

Defendant.

Case No. 5:26-cv-01731-SVK

**ORDER GRANTING DEFENDANT'S MOTION FOR ALTERNATIVE SERVICE BY PUBLICATION**

Re: Dkt. No. 12.

On February 27, 2026, Plaintiff Allstate Northbrook Indemnity Company ("Allstate") filed this action against its insured, Defendant Trung Van Do ("Defendant" or "Mr. Do"), seeking declaratory relief regarding Allstate's obligation to indemnify a default judgment entered against Mr. Do. Dkt. 1 ("Complaint"). Before the Court is Allstate's motion for authorization to serve Mr. Do by publication after being unable to effect personal service. Dkt. 12 (the "Motion"). The Motion is supported by declarations from Allstate's counsel, Dkt. 12-1 ("Derringer Declaration"), and an Allstate Claim Adjustor familiar with the matter, Dkt. 12-2 ("Estrada Declaration"). Defendant has neither appeared nor filed an opposition.

The Court finds the Motion suitable for disposition without oral argument. Civil L.R. 7-1(b). Having considered the Motion, the record and the relevant law, the Court **GRANTS** the Motion for the following reasons.

////

////

////

////

////

United States District Court
Northern District of California

## I. BACKGROUND

### A. The Underlying Lawsuit

Allstate insured Mr. Do under auto policy number 967 196 353 (the "Policy"). Compl. ¶ 6; Estrada Decl. ¶ 7. The Policy provided liability coverage with a $25,000 per-person limit and required, among other things, that Mr. Do cooperate with Allstate in the investigation, settlement and defense of any claim against him and promptly notify Allstate if he were sued. *See* Compl. ¶¶ 7-8; Estrada Decl. ¶¶ 8.

On July 3, 2021, Mr. Do was involved in a motor vehicle accident with third party, Selena Muniz. Compl. ¶ 9; Estrada Decl. ¶ 6. The Traffic Collision Report states that Mr. Do was driving intoxicated when he collided with Muniz's parked vehicle while she was inside it. Estrada Decl. ¶ 6. Muniz submitted a claim to Allstate and "invited" it to tender the Policy's $25,000 limit. *See* Compl. ¶¶ 10-11; Estrada Decl. ¶¶ 9-10. Based on the information available to it at the time, however, Allstate concluded that Muniz had sustained only minor injuries, with less than $5,000 in medical expenses and approximately $3,000 in lost wages. Compl. ¶ 12; Estrada Decl. ¶ 11. Accordingly, Allstate declined to tender the policy limit. Compl. ¶ 13; Estrada Decl. ¶ 12.

In June 2023, Muniz filed a lawsuit against Mr. Do (the "Underlying Lawsuit"). Compl. ¶ 14; Estrada Decl. ¶ 13. According to Allstate, neither Muniz nor Mr. Do notified it of the Underlying Lawsuit. Compl. ¶ 14-15; Estrada Decl. ¶¶ 13-14. This was despite Allstate having sent Mr. Do a letter and left him a voicemail instructing him to notify Allstate immediately if he were served with a lawsuit. Compl. ¶ 15; Estrada Decl. ¶ 14.

Mr. Do never appeared in the Underlying Lawsuit, and on March 6, 2024, the court entered Mr. Do's default. *See* Compl. ¶ 16; Estrada Decl. ¶ 15. On August 14, 2024, the court entered default judgment against Mr. Do in the amount of $1,108,399, consisting of $107,863 in damages, $536 in costs and $1 million in punitive damages. *Id.* Allstate alleges that, had it been able to participate in the defense of the Underlying Lawsuit, the resulting judgment would have been substantially lower. *See id.* According to Allstate, it did not learn of the Underlying Lawsuit until October 2024, when contacted by Muniz after the statutory period to set aside the default had expired. Compl. ¶ 17; Estrada Decl. ¶ 16.

United States District Court
Northern District of California

**B. Allstate's Complaint in this Action**

On February 27, 2026, Allstate filed this action against Mr. Do, asserting two claims for declaratory relief. *See* Compl. at 6-7. According to the Complaint, Allstate is informed and believes that Mr. Do contends that Allstate breached its duty to settle and is therefore responsible for satisfying the entire judgment entered against him. *Id.* ¶ 21. Allstate seeks a declaration that it did not breach any duty to settle because it was never presented with a settlement offer and, based on the information available to it at the time, could not reasonably have been expected to tender the Policy's $25,000 limit. *Id.* ¶ 22. Allstate also seeks a declaration that Mr. Do breached his obligations under the Policy by failing to notify Allstate of the Underlying Lawsuit after being served, thereby relieving Allstate of any obligation to provide coverage. *Id.* ¶¶ 27, 30.

**C. The Service Attempts**

Allstate retained First Legal to effect service on Mr. Do in this action. Motion at 12; Derringer ¶ 3. The record reflects the following efforts to locate and serve Mr. Do:

- On April 7, 9 and 11, 2026, First Legal attempted to serve Mr. Do at 146 August/Summer Drive, San Jose, California, 95137, the same address where he had been served in the Underlying Lawsuit. Motion at 4; Derringer Decl. ¶ 4, Ex. C. The current tenant at this address informed First Legal that she did not know Mr. Do and he did not live there. Motion at 4-5; Derringer Decl. ¶ 5, Ex. C.
- On April 14, 2026, Allstate's counsel ran a Lexis search and TLO report, which identified Mr. Do's best address as 2589 Greengate Drive, San Jose, California, 95132. Motion at 5; Derringer Decl. ¶ 6, Exs. D-E. Thereafter, on April 17, 19, 21, 23, 27 and 30, 2026, First Legal made six attempts to serve Mr. Do at the Greengate Drive address "at different times throughout the day." Motion at 5; Derringer Decl. ¶ 7, Ex. F. The process server's Declaration of Diligence reflects that the six attempts occurred at 10:16 a.m., 1:05 p.m., 2:42 p.m., 4:16 p.m., 5:37 p.m. and 7:32 p.m. Derringer Decl. Ex. F.

////

////

United States District Court
Northern District of California

- On May 5 and 8 2026, First Legal conducted surveillance on the Greengate Drive address. Motion at 5; Derringer Decl. ¶ 8, Exs. G-H. While there were vehicles parked in the driveway that were registered to Mr. Do's known relatives, nobody answered the door or was observed coming or going from the residence. *Id.*
- On May 13, 2026, First Legal performed a skip trace to confirm that the Greengate Drive address was owned by one of Mr. Do's relatives and was Mr. Do's current address. Motion at 5; Derringer Decl. ¶ 9, Ex. I.
- On May 20 and 24, 2026, First Legal conducted additional surveillance and service attempts at the Greengate Drive address, departing at 9:00 p.m. and 7:30 p.m., respectively. Motion at 5; Derringer Decl. ¶ 10, Ex. J. Although there was no activity at the residence, on May 24 the process server spoke with a neighbor, who stated that "one of the[ Greengate Drive inhabitants] works in a restaurant so [the] best time to catch anyone [at the Greengate Drive address] would be later at night." Derringer Decl. Ex. J.

On June 12, 2026, Allstate filed this Motion, seeking authorization to serve Mr. Do by publication as "there is nothing else that Allstate could have done to locate Mr. Do." Motion at 7.

## II. LEGAL STANDARD

Service upon an individual defendant in a judicial district of the United States may be effected pursuant to the state law where the district court is located. Fed. R. Civ. P. 4(e)(1). California Code of Civil Procedure § 415.50 provides that "[a] summons may be served by publication if upon affidavit it appears to the satisfaction of the court in which the action is pending that the party to be served cannot with reasonable diligence be served in another manner specified in this article and that," as relevant here, "[a] cause of action exists against the party." Cal. Civ. Proc. Code § 415.50(a).

////

////

////

////

## III. DISCUSSION

### A. Reasonable Diligence

The first issue is whether First Legal, acting on behalf of Allstate, exercised reasonable diligence in its attempts to serve Mr. Do. The Court concludes that it did.

To determine whether a plaintiff has exercised reasonable diligence, the Court examines the affidavit to see whether the plaintiff "took those steps a reasonable person who truly desired to give notice would have taken under the circumstances." *Donel, Inc. v. Badalian*, 87 Cal. App. 3d 327, 333 (1978). In doing so, courts recognize that "service by publication rarely results in actual notice" and, because of due process concerns, must be allowed "only as a last resort." *Watts v. Crawford*, 10 Cal. 4th 743, 749 n.5 (1995) (citation omitted). Accordingly, taking just one or a few reasonable steps to serve a defendant is insufficient. *See id.* But a plaintiff that makes "[a] number of honest attempts to learn [a] defendant's whereabouts or his address by inquiry of relatives, friends, and acquaintances, or … by investigation of appropriate city and telephone directories, the voters' register, and the real and personal property index in the assessor's office, near the defendant's last known location" generally satisfies their burden. *Kott v. Super. Ct.*, 45 Cal. App. 4th 1126, 1137 (1996). In either case, the reasonably diligence inquiry is highly fact specific; "no single formula or mode of search can be said to constitute due diligence on every case." *Id.*

The record reflects that First Legal undertook substantial efforts to personally serve Mr. Do. Over the course of approximately one month, First Legal made ten visits to the Greengate Drive address, including visits at varying times of day and night and on different days of the week. *See* Derringer Decl. ¶¶ 4, 7-8, 10. First Legal also conducted multiple database searches—including a Lexis search, a TLO report and a skip trace—to confirm that the Greengate Drive address was in fact associated with Mr. Do and his relatives. Derringer Decl. ¶¶ 6, 9. After confirming the address through those searches, First Legal returned to the residence and made two additional attempts at personal service. *See* Derringer Decl. ¶ 10. These efforts weigh in favor of a finding of reasonable diligence. *See Macias v. Fasail*, No. 19-cv-00728-LHK, 2020 WL 2542028, at *3 (N.D. Cal. May 19, 2020) (finding reasonable diligence where the process server

made ten attempts at one address within two weeks); *cf. also THC-Orange Cnty. Inc. v. Valdez*, No. 17-cv-01911-LB, 2017 WL 3115171, at *4 (N.D. Cal. July 21, 2017) (lacking diligence where the process server did not confirm that the defendant lived at the address under surveillance); *Mayflower Transit, LLC v. Castaneda*, No. 4:25-cv-06941-KAW, 2026 WL 1788790, at *2 (N.D. Cal. June 22, 2026) (lacking diligence where the process server did not follow up on the results of a skip trace).

Additionally, during First Legal's May 24, 2026 surveillance, the process server spoke with a neighboring resident, who explained that one of the occupants of the Greengate Drive residence worked at a restaurant and generally returned home later in the evening. Derringer Decl. Ex. J. Although First Legal could have made an additional late-evening service attempt after obtaining that information, it had already conducted an evening surveillance of the residence from approximately 7:00 to 9:00 p.m. on a prior occasion without detecting activity. *Id.* Reasonable diligence requires neither exhaustive efforts nor that a plaintiff "leave no stone unturned." *United Fin. Cas. Co. v. HWH Express Inc.*, No. 25-cv-07842-TSH, 2026 WL 447520, at *4 (N.D. Cal. Feb. 17, 2026) (quoting *Cummings v. Brantley Hale*, No. 15-cv-04723-JCS, 2016 WL 4762208, at *2 (N.D. Cal. Sep. 13, 2016)). Here, particularly in light of First Legal's numerous attempts at various times of day, including at least one that had stretched into the late evening, the Court does not find that the absence of a further late-evening attempts negates the substantial efforts First Legal undertook to personally serve Mr. Do.

Accordingly, considering the totality of First Legal's efforts, the Court concludes that Allstate has demonstrated that Mr. Do "cannot with reasonable diligence be served in another manner" within the meaning of § 415.50(a).

////

////

////

////

////

////

**B. Cause of Action**

"For the purposes of service by publication, the existence of a cause of action is a jurisdictional fact." *Harris v. Cavasso*, 68 Cal. App. 3d 723, 726 (1977). Accordingly, in addition to demonstrating reasonable diligence, a plaintiff seeking service by publication must submit an affidavit setting forth facts that would constitute legal evidence that the cause of action exists against the party to be served. Cal. Civ. Proc. Code § 415.50(a)(1); *Harris*, 68 Cal. App. 3d at 726. The supporting affidavit must be based on the declarant's personal knowledge and set forth evidentiary facts, rather than conclusory allegations or unsupported hearsay. *See Malachowski v. Doheny*, No 21-cv-05751-VKD, 2021 WL 5991680, at *2 (N.D. Cal. Nov. 30, 2021).

Allstate submits a declaration from Jeanette Estrada, a Claims Adjustor employed by Allstate, who was "personally involved in the handling and investigation of the claim involving Ms. Muniz's lawsuit against Mr. Do and the subsequent default judgment entered against Mr. Do." Estrada Decl. ¶ 4. Ms. Estrada states that, in the course of handling the claim, she reviewed Allstate's claim file, which contained, among other things, correspondence, notes, medical reports, payment records, and other information concerning the handling of Ms. Muniz's claim. *Id.* ¶¶ 3-5. Courts have found similar declarations sufficient where the declarant had personal knowledge of the relevant insurance relationship and underlying facts through their involvement in handling the claim. *See Safeco Ins. Co. of Am. V. Davis*, No. 2:21-cv-05505-RGK-KS, 2022 WL 1592728, at *2 (C.D. Cal. Apr. 5, 2022); *see also Zheijiang Zheshang Asset Mgmt. Co. LTD v. Xinwen Zhuang et al.*, No. 8:25-cv-00938-FWS-JDE, 2026 WL 1834154, at *4 (C.D. Cal. May 6, 2026). Therefore, Allstate has satisfied the statutory requirement of showing that a cause of action exists against Mr. Do.

////

////

////

////

////

////

United States District Court
Northern District of California

## IV. CONCLUSION

For the foregoing reasons, Allstate's motion for service by publication is **GRANTED.** Publication shall be made in the *San Jose Mercury News* at least once a week for four consecutive weeks, to be completed **no later than Friday, September 4, 2026.**

**SO ORDERED.**

Dated: July 22, 2026

SUSAN VAN KEULEN
United States Magistrate Judge